ST. CLAIR v. CHICAGO, M., ST. P. & P. R. CO.

No. 5300.

Circuit Court of Appeals, Seventh Circuit.

March 18, 1935.

Florence Thacker, J. D. Thacker, Lloyd D. Claycombe, and Albert Stump, all of Indianapolis, Ind., for appellant.

C. S. Jefferson and M. L. Bluhm, both of Chicago, Ill., and Bert Beasley, of Indianapolis, Ind., for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

St. Clair, appellant, sued appellee, his former employer, to recover for alleged breach of contract of employment made by a wage agreement between the employer and the labor union of which St. Clair was a member. The verdict was for appellee, and the appeal is from the judgment thereon.

St. Clair had worked for this employer a number of years as a railroad conductor, but for some time prior to termination of his service he had been working as a brakeman, with seniority rights for resuming the status of conductor when the company's business warranted. He belonged to the Order of Railway Conductors, but while working as a brakeman the stipulated Schedule of the Railway Trainmen governed the relations between employer and employee. Rule 50 of the Schedule is set forth in the margin*, and this controversy has to do largely with that part of it which provides: "Trainmen taken out of service or censured for cause, shall be notified by the Company of the reason therefor and shall be given a hearing within five (5) days after being taken out of service, if demanded, and if held longer shall be paid for all time so held at their regular rates of pay." Provision is made for trainmen to bring witnesses, and for appeal to a higher officer if the decision is unsatisfactory; and it is specified that the decision shall be made known within three days after the hearing or the trainman shall be paid for all time lost after their expiration. Under these provisions the time lost, as specified, must be paid for regardless of the ultimate decision on the suspension or dismissal.

St. Clair ran out of Aberdeen, S. D. In April, 1928, he asked and was granted a furlough for ninety days beginning April 16, which time was subsequently extended. He went to Indianapolis, returning to Aberdeen and reporting for work August 28, whereupon, on that date, he was notified in writing that he was taken out of service due to statements made by him in a letter of April 20, 1928, copies of which he had mailed to the company's president, vice president, and general manager. On the same date he was

---

*"Rule 50. Discipline.

"(a) When objections or charges are made against any trainman they shall be put in writing, conveying clearly to the accused the nature thereof.

"The proper officer of the Company will hear any reasonable complaint made by an individual trainman, or any complaint made by the authorized committee of the Brotherhood of Railroad Trainmen representing same, provided due notice shall be given the Company in writing of the subject of the complaint, and a special appointment made as to time and place same shall be considered.

"Trainmen continued in the service pending an investigation of alleged offense shall be notified, within ten (10) days after the Superintendent or Trainmaster has information of the offense, that a charge is pending. Within ten (10) days thereafter an investigation shall be held, if demanded, and a decision shall be rendered within three (3) days. Trainmen taken out of service or censured for cause, shall be notified by the Company of the reason therefor and shall be given a hearing within five (5) days after being taken out of service,

if demanded, and if held longer shall be paid for all time so held at their regular rates of pay.

"Trainmen shall have the right to be present and have an employe of their choice at hearings and investigations to hear the testimony. They shall also have the right to bring such witnesses as they may desire to give testimony, and may appeal to a higher officer of the Company in case the decision is unsatisfactory. Such decision shall be made known within three (3) days after the hearing or trainmen shall be paid for all time lost after the expiration of three (3) days. In case suspension or dismissal is found to be unjust, trainmen shall be reinstated and paid for all time lost.

"(b) Before any entry is recorded on the service record of a trainman he shall be notified and furnished an exact copy of the proposed entry. The trainman so notified will within ten (10) days of such notification, either acknowledge receipt of such entry or protest the same. In event the proposed entry is protested, it shall not be entered on record until protest has been adjusted."

advised, in writing, that a charge against him was pending in connection with statements made in the letter of April 20; and on the same date he was notified that an investigation would be held in the trainmaster's office at Aberdeen, Wednesday, August 29, at 10 a. m. respecting the charge growing out of the sending of the letter of April 20. Thereupon St. Clair told the trainmaster that the time fixed was too short to prepare for the investigation, and the time was extended by agreement to September 3. On September 1 St. Clair wrote the trainmaster, saying: "This letter is to advise that the investigation as per your notice of August 28, 1928 arranged to be held on September 1 is postponed, on account that the representative that I have selected to be present cannot be in Aberdeen on the date fixed. You will be advised in ample time when he can be in Aberdeen for this investigation."

Under date of September 2, 1928, the trainmaster sent a note directed "To the Superintendent Employment Bureau," saying: "The service of A. A. St. Clair, Conductor West H & D Division, Terminated on September 2, 1928. Dismissed account violation of Trainmen's Schedule Rule 50."

Under date of September 11, 1928, St. Clair wrote to the trainmaster:

"I have information that my services for the C. M. St. P. & P. Railroad are dispensed with, in other words discharged under the date of September 2nd, 1928.

"This letter is for the purpose of protest, of any such entry being recorded on my service record."

St. Clair testified that after his discharge he took the case up with his union, which was authorized to represent him.

It seems that the general manager of the railroad was expecting to be at Aberdeen about May 6, 1929, and would then consider St. Clair's case. On May 7, Kennedy, general chairman of the Brotherhood, wired the general manager that he had had a talk with St. Clair, and that they desired the meeting postponed because it was impossible to get parties there. Kennedy also notified St. Clair of the postponement of the meeting. Afterwards, on July 12, 1929, appellee's general manager wired the general chairman of the Order of Railway Conductors, saying: "I would prefer that you set a date for the hearing; and when you have determined on a date, let me know and will advise if satisfactory."

Notwithstanding St. Clair's notice of September 1, 1928, peremptorily postponing the date of hearing from September 3 and saying he would advise when his representative could be in Aberdeen for the investigation, and the subsequent postponement of date of hearing by the officials of the union, and the notice to them to fix their own time for the hearing, no such date was ever fixed and no hearing was ever had.

Mr. Beeler, general chairman of the Order of Railway Conductors, testified that after the general manager had written suggesting that Beeler set the date for the hearing, Beeler wrote St. Clair asking him to set a date and give time for notice to permit witnesses to be present. His letter to that effect, dated March 4, 1931, is in evidence, but he never heard from St. Clair after writing that letter. He testified that Mr. Harsted, the railroad's general manager, had never declined to hold a hearing.

From the record it is plain that the postponement of the hearing of St. Clair's grievance was at no time at the request or for the accommodation of the employer, but was in every case at the instance of St. Clair or by procurement of his representative.

The merits of St. Clair's complaint of his suspension or discharge have never been heard, and are not directly or indirectly involved in this suit, wherein the issue is whether St. Clair may, under Rule 50, recover wages for the period of the pendency of his grievance regardless of the outcome thereof.

Rule 50 contemplates that an employee shall have a prompt hearing, and to that end —if the employer does not accord him a hearing within the specified time, and decide the grievance within a fixed time thereafter —the employee shall be paid his wages during the period of delay. But this does not mean that the employee may himself occasion the delay, and still penalize the employer by requiring payment for that period. By the undisputed evidence the employer was at all times ready to accord the hearing, after the day on which St. Clair was taken out of the service. The employer had no power to compel the employee to proceed with the hearing. The demand on the employer made by St. Clair's attorney on January 28, 1933, nearly four and one-half years after the notice of suspension and dismissal had been given, was not for a hearing of the grievance, but for payment of wages claimed to be due because there had been no hearing. In these circumstances the

employer was well warranted in concluding that St. Clair had long abandoned any desire or intent to have a hearing of his grievance. Indeed, if St. Clair prevailed it would follow that the longer an employee succeeded in delaying such a hearing just so much longer he would be receiving full wages without giving service therefor.

In the charge to the jury the court well stated: "This plaintiff * * * was entitled to a hearing, but he cannot refuse to attend a hearing arbitrarily and refuse to answer a letter written to him asking when he wants the hearing, and then come into this Court five years later and recover for the time which he says he lost."

Under the evidence, had the jury returned a verdict for appellant we do not see how judgment thereon could have been sustained. In this view of the case we need not and do not consider appellee's contention that the wage agreement between the union and the employer is a unilateral contract and not enforceable, nor various other contentions made on behalf of the respective parties.

The judgment of the District Court is affirmed.